CHACKER ET AL. *v.* MARCUS ET AL.

[No. 17,806.  Filed June 29, 1949.  Rehearing denied January 10, 1950.]

On Petition for Rehearing. *Petition denied.*

*Lee M. Rose,* of Gary; *Cope J. Hanley,* of Rensselaer; and *E. Miles Norton,* of Crown Point, for appellants.

*Ora L. Wildermuth, Louis H. George,* and *Albert H. Gavit,* all of Gary, for appellees.

BOWEN, C. J.—This is an appeal in an action for damages in which the appellants charged the appellees, defendants below, with a conspiracy and with the perpetration of a joint tort against the appellants in the taking of monies and properties belonging to a partnership restaurant business.

The issues were formed on appellants' second amended complaint seeking damages against appellee Marcus, who was one of the partners in the restaurant business, and appellee Lyras, who was employed to assist in the keeping of the records of the business under an allegation that the said Marcus and Lyras conspired to and did keep false books in order that Marcus could and

did embezzle $25,000 to $35,000 from the firm, and the separate answers of the appellees denying the allegations of the complaint, and appellee Lyras' affirmative answer and the appellants' reply to appellees' answer.

The cause was submitted to a jury for trial, and at the close of plaintiffs' evidence, the court sustained the appellees' separate motions for directed verdicts in their favor, and judgment was rendered on the jury's subsequent verdict for the appellees, defendants below.

The appellants have assigned as error the action of the trial court in overruling their motions for a new trial. Grounds of the motion for a new trial were that the verdict of the jury is not sustained by sufficient evidence and is contrary to law; and that error of law occurred at the trial in that the court erred in directing the jury to return a verdict against the plaintiffs and in favor of the defendants.

It is well settled that the trial court may, and it is its duty upon proper request, to direct a verdict for the defendant in cases where the evidence most favorable to the plaintiff, together with all reasonable inferences which a jury might draw therefrom, is insufficient to establish one or more facts essential to the plaintiff's right of action. *Patterson* v. *Southern R. Co. of Ind.* (1912), 52 Ind. App. 618, 99 N. E. 491; *Cleveland, etc., R. Co.* v. *Haas* (1905), 35 Ind. App. 626, 74 N. E. 1003; *Tabor* v. *Continental Baking Co.* (1941), 110 Ind. App. 633, 38 N. E. 2d 257.

The foregoing rule only applies where it clearly appears that the evidence fails to establish one or more of the facts essential to a recovery, and where the facts and the reasonable inferences which may be drawn therefrom are not disputed and where the only possible inference to be drawn there-

from is favorable to the party asking the instructions. *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20; *Roberts* v. *Terre Haute Electric Co.* (1905), 37 Ind. App. 664, 76 N. E. 323; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723.

The evidence discloses that the appellants, Nick B. Chacker, Christ Baltagis, and Mathew Kypreos, were engaged as partners in the operation of the Merchants Restaurant at Gary, Indiana, with one of the appellees, George Marcus. The appellee Lyras was employed to assist the partnership and to come to the restaurant from time to time and to enter from the cash register ribbons each day's receipts of the restaurant in a daybook, and also to enter the firm's disbursements from the cancelled checks and pay out tickets from the cash register. The appellant Chacker was not active in the business and seldom visited the business. The appellant Kypreos cooked in the restaurant, and appellee Marcus and appellant Baltagis both worked in the restaurant. During a part of the time, appellee Marcus had charge of the cash register during the daytime and appellant Baltagis handled it at night. Only Marcus and appellant Baltagis had the combination of the safe.

The register tape and receipted bills were destroyed by Lyras after entries were made with Marcus' knowledge. Lyras wrote the distribution checks to the partners and Marcus delivered them. During the first ten days of September, October, and November of 1944 daily receipts as entered from the cash register tapes were reduced by $100 per day. These amounts were correctly entered in the other book, the ledger, and Lyras' written report to the firm for September, 1944, showed the correct amount. It appears to be undisputed that these entries were made for the purpose

of avoiding payment of taxes, and there was no evidence of embezzlement or misappropriation of the funds in these entries.

The appellant, however, insists that the evidence introduced by the plaintiffs did sustain the essential allegations of the complaint in that plaintiffs' Exhibit 15 showed that the profits fluctuated between the time appellee Marcus was in charge of the cash register and when others were exclusively in charge of it. Exhibit 15 was a cash journal of the business and shows a fluctuation of net profits. This exhibit showed a steady business with rising profits in 1943 and a steady business through 1944 and 1945 with the exception that the profits were down in January, February, March, and April, 1943, while Marcus was handling the cash with Lyras making the records in the daybook, and that the profits were up from May through October, 1943, while Marcus was sick and away, and down again the next seventeen months through March, 1945; and that when Lyras was out in July, 1945, there was an increase of net profits to the end of 1945. This exhibit did show that for three months after March, 1945, with Marcus working and Lyras making the entries in the daybook, the results were good.

The appellee Lyras did not handle any cash, and there is no contention that there was any direct evidence of any embezzlement or misappropriation of funds by either Marcus or Lyras.

The appellant insists that Exhibit 15 showing the fluctuation of profits between the time appellee Marcus was in charge of the cash register and when others were exclusively in charge of it together with all of the other evidence in the case was sufficient to show that firm monies were embezzled and that Lyras and Marcus

worked together to deceive the plaintiffs and cover up shortages. The other evidence, in substance, relied upon by appellants were statements made by Marcus and Lyras to Chacker as follows: "Don't worry, we are doing business okay. Everything will be taken care of;" and the claim that Lyras and Marcus each sought to justify small net profits, and that they worked together in close cooperation in making and keeping the records, and other similar evidence.

It seems to us that a fair consideration of all of the evidence in the light of appellant's contentions, present a situation in which the appellant asks this court to establish a rule that when one partner is in charge of a business and the business makes less profit than when other partners were in exclusive charge of it, that such evidence together with reassuring oral reports of the condition of the business together with the other circumstances recited herein from the instant case, would be sufficient to justify a reasonable inference that such partner is guilty of misappropriation of funds.

As a matter of law, it cannot be said that embezzlement or misappropriation of funds can be established from a mere showing of a fluctuation of profits alone, and clearly all of the other evidence in the instant case is insufficient to establish a conspiracy between Marcus and Lyras. The record is absolutely devoid of any direct evidence that Marcus or Lyras embezzled or misappropriated any monies or properties of the partnership, nor does any evidence appear from which it could be reasonably inferred that any sums of money were taken from the partnership funds by either Marcus or Lyras.

The appellants in the trial court wholly failed to pro-

duce evidence about which reasonable men might differ as to an existence of a conspiracy between Marcus and Lyras as alleged in the complaint.

Considering all of the evidence and the evidence most favorable to appellants against whom the directed verdict was requested, we fail to see any facts from which any reasonable inference could be drawn showing any conspiracy between Marcus and Lyras to embezzle or misappropriate funds from the partnership or that either of these parties embezzled any monies or properties belonging to the business.

There is no cause of action for a conspiracy unless the act is consummated and in addition damages are suffered and proved. *Union Loan Co.* v. *Hottmire* (1936), 103 Ind. App. 499, 4 N. E. 2d 58; *Williams* v. *Citizens Gas Co.* (1933), 206 Ind. 448, 188 N. E. 212.

It is true that the evidence of fluctuating profits might be proper in the determination of the question of damages in the event that appellants had established evidence of embezzlement or misappropriation under the authority of *Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686; *J. P. Smith Shoe Co.* v. *Curme-Feltman Shoe* (1918), 71 Ind. App. 401, 118 N. E. 360, as well as *Maddox* v. *Yocum* (1944), 114 Ind. App. 390, 52 N. E. 2d 636.

However, the record in the instant case is wholly devoid of any facts from which any reasonable inference could be drawn showing liability of Marcus and Lyras as charged in the complaint.

The trial court, therefore, did not err in overruling appellants' motion for a new trial and the court did not err in directing the jury to return a verdict against the appellants and in favor of the appellees, and the

decision and judgment of the lower court is sustained by sufficient evidence and is not contrary to law.

Judgment affirmed.

Draper, J., and Martin, J., not participating.

NOTE.—Reported in 86 N. E. 2d 708.

## ON PETITION FOR REHEARING

BOWEN, J.—Appellants in their petition for rehearing have pointed out that this court in its original opinion, in referring to two separate and different sets of entries which were made in records kept by the partnership, stated that the amounts were correctly entered in the other book, the ledger. This was erroneous.

In the evidence in this cause the records of the partnership were variously referred to as the cash journal, ledger, and day book. The records referred to in witnesses' testimony as cash journal and ledger showed amounts of one hundred dollars less than the entries shown in the record referred to as the day book.

Error in the designation of the records could not change the result reached in this case, and similarly, a designation and description of Exhibit No. 15 as set forth in the original opinion does not affect the result reached nor the reasoning of this court in the original opinion.

Petition for rehearing denied.

NOTE.—Petition for rehearing reported in 89 N. E. 2d 455.